**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

TERRY SPURGEON, as custodian for the )
benefit of James E. Spurgeon, individually and )
on behalf of all others similarly situated, )
)
              Plaintiff, )
v. )          Case No. 04L241
)
PACIFIC LIFE INSURANCE COMPANY, )
)
              Defendant. )
_____ )  **CASE NO.** ___06-cv-983___

JAMES E. SPURGEON, individually and )
on behalf of all others similarly situated, )
)
              Plaintiff, )
v. )          Case No. 04L241
)
PACIFIC LIFE INSURANCE COMPANY, )
)
              Defendant. )

## NOTICE OF REMOVAL

Pursuant to 15 U.S.C. §§ 77p(c), 78bb(f)(2) and/or 28 U.S.C. §§ 1441 & 1446, defendant

Pacific Life Insurance Company ("Pacific Life") files this Notice of Removal hereby removing

this case to the District Court for the Southern District of Illinois. [1]

_____

[1] As is explained in greater detail herein, on November 13, 2006, Pacific Life removed this case, in the posture in which it had been reopened by the Circuit Court of Madison County, to this Court. On November 20, 2006, an earlier posture of this case was remanded to the Circuit Court of Madison County -- the posture in which it was reviewed by the Seventh Circuit in 2005 and by the Supreme Court in 2006, pursuant to the mandate of the Seventh Circuit on remand from the Supreme Court. The November 20 remand was not made in response to Pacific Life's November 13, 2006, removal. Now that the Circuit Court of Madison County has reinstated the state court case pursuant to the November 20, 2006, remand, Pacific Life files this additional Notice of Removal as a precaution given the unique procedural posture of this case. These two Notices of Removal involve the same case and are substantively identical, except that this Notice

1

## I.    Introduction

1.    This case is removable under the Securities Litigation Uniform Standards Act ("SLUSA"), which this Court has previously determined imposes no procedural limits on removal of litigation subject to SLUSA preclusion. Further, this Court's judgments permitting second removals of other market timing cases have been affirmed by the Seventh Circuit. *See, e.g., Bradfisch v. Templeton Funds, Inc.*, 05-CV-298-MJR, Doc. No. 24, 2005 U.S. Dist. LEXIS 14500 (July 12, 2005), *aff'd* 2006 U.S. App. LEXIS 12394 (7th Cir. May 19, 2006).

2.    This case is independently removable under Sections 1441 and 1446 which, *inter alia*, permit removal of a case that was not initially removable within thirty days after receipt by the defendant of a copy of an order or other paper from which it may first be ascertained that the case is one which is or has become removable. *See* 28 U.S.C. § 1446(b). This case was not removable when first filed, as this Court determined definitively in its June 24, 2004 decision in *Terry Spurgeon v. Pacific Life Ins. Co.*, 04-CV-355-MJR, Doc. No. 27, 2004 U.S. Dist. LEXIS 29803 (S.D. Ill. June 24, 2004). *See, e.g., Powers v. Chesapeake and Ohio RR Co.*, 169 U.S. 92 (1898) (affirming a successive removal regardless of whether initial decision to remand was correctly decided); *Doe v. Amer. Red Cross*, 14 F.3d 196, 200 (3d Cir. 1993) (affirming a successive removal notwithstanding its recognition that the district court's initial decision to remand was subsequently "demonstrated to have been decided erroneously"). This case is being removed within 30 days of the orders from which it could first be determined that it was removable. This case did not become removable from the Circuit Court of Madison County until it was *in* that court, which did not occur until the Circuit Court of Madison County reopened the case – which had earlier been dismissed – on November 9, 2006 and/or this Court remanded this case to the Circuit Court of Madison County on November 20, 2006.

3.    Pacific Life removes on the following grounds: The Supreme Court's

describes procedural changes that have occurred since the earlier Notice was filed. A motion to consolidate has also been filed.

decisions in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1507 (2006) and *Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145 (2006), and the Seventh Circuit's decision in *Bradfisch v. Templeton Funds, Inc.*, 2006 U.S. App. LEXIS 12394 (7th Cir. May 19, 2006), *rehearing denied* (with additional explanation) (June 15, 2006), 2006 WL 1751307, *motion to vacate denied* (June 19, 2006), establish that this case falls within SLUSA, and as such, it is removable under SLUSA's removal provision.  Although it is not necessary to support removal in courts within the Seventh Circuit's jurisdiction, it is the case that *Spurgeon v. Pacific Life* was directly reviewed in *Kircher v. Putnam Funds Trust*, indirectly but expressly reviewed in *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, and consolidated with *Bradfisch v. Templeton Funds, Inc.*, then decided subsequently.

**II.    Proceedings To Date**

4.     Plaintiff Terry Spurgeon, "as custodian for the benefit of James E. Spurgeon II," individually and on behalf of all others similarly situated, and his son, James E. Spurgeon, have filed three related complaints against Pacific Life in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois.  Each claims that James and others were harmed by market-timed trades involving those funds, in which Pacific Life's variable annuity contract holders invest, that hold foreign securities.

5.     Terry Spurgeon first filed suit on December 10, 2003 but voluntarily dismissed that complaint on February 2, 2004, while it was pending before this Court after being removed.

6.     Terry Spurgeon filed a rewritten complaint on March 12, 2004, which he served on Pacific Life almost two months later, on May 10, 2004.

7.     A third complaint, amending the March 12, 2004 complaint, was filed in the Circuit Court of Madison County, by leave of court dated October 8, 2004.  It had tentatively been served on Pacific Life earlier.  True and correct copies of all documents in the state court

file are attached hereto as Exhibit A.

8.     The procedural history of the second and third complaints is as follows:
On May 21, 2004, Pacific Life removed the case to this Court, based on the second complaint,
arguing *inter alia* that the complaint was removable and precluded by SLUSA. This Court
remanded the case on June 24, 2004, explaining that SLUSA did not apply because claims
brought "by *holders* such as Spurgeon" are not removable under SLUSA. *Spurgeon v. Pacific
Life Ins. Co.*, 2004 U.S. Dist. LEXIS 29803 at *6 (S.D. Ill. June 24, 2004). Pacific Life timely
noticed its appeal of that decision on July 1, 2004.

9.     Pacific Life moved to stay proceedings in the Circuit Court of Madison
County on July 6, 2004, pending resolution of its appeal. No decision ever issued.

10.     On September 1, 2004, Terry Spurgeon asked the Circuit Court of
Madison County for leave to amend the complaint by substituting his son James E. Spurgeon as
plaintiff. That motion was granted five weeks later.

11.     On September 2, 2004, Pacific Life moved to stay this Court's remand
order pending resolution of its appeal. This Court denied the motion for want of jurisdiction on
September 8, 2004.

12.     On September 10, 2004, Pacific Life moved in the Seventh Circuit for a
stay of this Court's remand order. The stay was granted October 26, 2004.

13.     The Seventh Circuit, having consolidated Pacific Life's appeal (assigned
No. 04-2687) with other related market timing appeals under the lead caption *Kircher v. Putnam
Funds Trust, et al.* (assigned No. 04-1495), ruled on April 5, 2005 that SLUSA precluded
Spurgeon's complaint and the complaints of the other plaintiffs and remanded the cases to this
Court with instructions to dismiss the state law claims. *See Kircher v. Putnam Funds*, 403 F.3d
478 (7th Cir. 2005).

14.     The Seventh Circuit expressly reached the question of whether SLUSA

4

applies to claims brought solely by holders of securities in order to decide the appeal in *Spurgeon v. Pacific Life Insurance Co.* 403 F.3d at 483 ("The way the *Spurgeon* class has been defined prevents us from following the third circuit's path: we must answer the question rather than postpone its resolution."). The Seventh Circuit concluded that SLUSA does apply to holder claims, reasoning that *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), is a "judicial creation" and did not "restrict the coverage of the statute and regulation" – Section 10(b) and Rule 10b-5, *id.* at 483-484, and therefore did not restrict the coverage of SLUSA.

15.    On May 13, 2005, Spurgeon filed in this Court an amended complaint, asserting it was filed as of right, and a motion for leave to file the same amended complaint. On May 27, 2005, this Court dismissed Spurgeon's complaint, declined to decide the motion to amend the complaint on mootness grounds, and ordered the case closed. (Following this Court's dismissal, the Circuit Court of Madison County also dismissed this case and removed it from the court's docket. *See* Exhibit B attached hereto which is a copy of the Madison County Docket Entry of Dismissal).

16.    On June 27, 2005, Spurgeon noticed an appeal of this Court's May 27, 2005 decision to the Seventh Circuit (assigned No. 05-3011). The Seventh Circuit consolidated Spurgeon's appeal with other appeals from this Court's dismissals of market-timing cases – the cases that had previously been consolidated in *Kircher*, the *Bradfisch* cases, and others. These appeals were consolidated under the lead caption *Potter v. Janus Investment Fund*, No. 05-2895 and consolidated cases. On August 16, 2005, the Seventh Circuit stayed proceedings in the consolidated *Potter* appeals pending the Supreme Court's consideration of the plaintiffs' petition for *certiorari* in *Kircher*.

17.    On September 29, 2005, Spurgeon – along with the other investors in the cases consolidated in *Kircher* – filed a petition for *certiorari* with the Supreme Court, asking for review of the Seventh Circuit's April 5 decision. Spurgeon and the others asked the Court to

5

resolve two questions: 1) whether the Seventh Circuit lacked jurisdiction to review this Court's orders; and 2) whether the Seventh Circuit erred in interpreting SLUSA to cover claims brought by holders of securities.

18.     Two days earlier, the Supreme Court had granted a writ of *certiorari* to resolve the conflict between the Seventh Circuit's decision in this case (*Kircher v. Putnam Funds*) and the Second Circuit's decision in *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* with respect to whether SLUSA reached claims brought by holders of securities. 126 S. Ct. 34 (2005). The Second Circuit had held that SLUSA did not reach claims brought solely by holders of securities. *See* 395 F.3d 25 (2d Cir. 2005).

19.     The question the Supreme Court agreed to resolve made clear that the Supreme Court had undertaken to review both the Seventh Circuit's and the Second Circuit's decisions:

> "Whether, as the Seventh Circuit held earlier this month and in direct conflict with the decision below, SLUSA preempts state law class action claims based upon allegedly fraudulent statements or omissions brought solely on behalf of persons who were induced thereby to hold or retain (and not purchase or sell) securities?"

*See Petition for a Writ of Certiorari to the United States Court of Appeals for the Second Circuit, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, No. 04-1371 (filed April 11, 2005, United States Supreme Court); see also www.supremecourtus.gov (follow docket hyperlink).

20.     On January 6, 2006, the Supreme Court granted a writ of *certiorari* to review the Seventh Circuit's case, but limited review solely to the jurisdictional question presented. 126 S. Ct. 979 (2006) (granting the petition "limited to Question 1 presented by the petition"). The Supreme Court had already undertaken to review the Seventh Circuit's decision with respect to SLUSA's reach in undertaking to resolve the conflict between the Seventh Circuit in this case and the Second Circuit in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*. Pacific Life submitted a brief in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*.

6

21. On March 21, 2006, the Supreme Court issued its decision in *Dabit*, expressly ruling that the Seventh Circuit's interpretation of SLUSA in *Kircher* was correct and the Second Circuit's in *Dabit* incorrect. *See* 126 S. Ct. 1503, 1507 (2006) ("The background, the text, and the purpose of SLUSA's pre-emption provision all support the broader interpretation adopted by the Seventh Circuit."); 1515 (vacating the Second Circuit's decision).

22. Two days later, the Seventh Circuit directed all parties in the *Potter v. Janus Investment Fund* and consolidated appeals before it to address the effect of the Supreme Court's decision in *Dabit* on these appeals.

23. On May 19, 2006, the Seventh Circuit decided the appeals of four of the *Potter* appellants – Bradfisch, Kwiatkowski, Parise, and Woodbury – whose cases had not been among those consolidated in the *Kircher* cases. The Seventh Circuit affirmed this Court's judgments in each case – both that the funds were permitted to remove their cases a second time and that the investors' market-timing complaints must be dismissed because they were precluded by SLUSA. *See Bradfisch v. Templeton Funds, Inc.*, 2006 U.S. App. LEXIS 12394 (7th Cir. May 19, 2006).

24. On June 15, 2006, the Supreme Court issued its ruling in *Kircher* – determining that the Seventh Circuit had lacked jurisdiction to review this Court's remand orders. In doing so, the Court expressly confirmed that its "recent decision in *Dabit*" had "expressly disavow[ed]" the limited view of SLUSA's scope on which the remand decisions in this and the other market-timing cases had been premised. *Kircher*, 126 S. Ct. at 2156.

25. Later on June 15, 2006, the Seventh Circuit confirmed its decision in *Bradfisch* and consolidated cases by denying Bradfisch *et al.*'s petition for rehearing. On June 19, the Seventh Circuit re-confirmed its earlier decisions and denied Bradfisch *et al.*'s motion to vacate its earlier orders in light of the Supreme Court's decision in *Kircher*.

26. On October 16, 2006, the Seventh Circuit issued an opinion in both the

*Kircher* appeals, which were on remand from the Supreme Court, and the not-yet-decided *Potter* appeals that had been pending before it. *See In the Matter of Mutual Fund Market-Timing Litigation*, 2006 U.S. App. LEXIS 25660 (7th Cir. Oct. 16, 2006). The Seventh Circuit interpreted the Supreme Court's decision to require it to "rewind the litigation" to the date when the Seventh Circuit had asserted jurisdiction over each of the cases involved in the *Kircher* appeals, including this one. *Id.* at *6. Therefore, it vacated this Court's dismissals of the *Spurgeon* case and the other *Kircher* cases, and remanded to this Court with instructions to remand to state court. *Id.* at *12.

27.     The Seventh Circuit noted that a remand decision "does not block a successive removal if facts or law change after the initial remand," and that "*Dabit* supplies an intervening change of law" here, but expressly reserved its decision as to the application to these cases until the questions ripen. *Id.* at *11 ("their resolution ought not be anticipated before the steps that make them relevant have been taken," *id.* at 7-8).

28.     On November 9, 2006, the Circuit Court of Madison County entered an order reopening this case. *See* Exhibit C attached hereto which is a copy of the Madison County Order Reopening this case. On November 20, 2006, this Court remanded the case, in the posture in which it was reviewed by the Seventh Circuit in 2005 and by the Supreme Court, to the Circuit Court of Madison County – following the Seventh Circuit November 14, 2006 mandate. On November 20, 2006, the Circuit Court of Madison County reinstated the case pursuant to the November 20 remand. *See* Exhibit D attached hereto which is a copy of the Madison County docket sheet showing the case was reinstated on November 20. As discussed, the November 20 remand was not in response to Pacific Life's removal on November 13, 2006.

III.   **The Nature Of This Action**

29.    Plaintiff's current complaint[2] concerns variable annuity contracts issued by Pacific Life to investors in 49 states and the District of Columbia, in which the contract holders have allocated premium payments and accumulated account value in mutual fund portfolios.  Such amounts are held in a "Separate Account;" which segregates assets attributable to the contracts from assets in Pacific Life's general account.  The Separate Account is subdivided into "subaccounts," each of which invests in a mutual fund portfolio.  Owners of variable annuity contracts allocate their premiums and account value among subaccounts, and, in so doing, direct these amounts to the mutual funds.  Contract holders may transfer among the subaccounts, effectively "selling" units (shares) in one and "buying" units in another, at prices set each day based on the value assigned to each subaccount, which is derived from the net asset value per share of the underlying mutual fund portfolio.  Complaint ¶¶ 8-21.

30.    Pacific Life registers the interests in the Separate Account with the SEC as securities under the Securities Act of 1933 and registers the Separate Account as a Unit Investment Trust with the SEC.  *See* www.sec.gov (Edgar variable insurance products or mutual funds search).  The international fund in which plaintiff invested, as most of the portfolios available to contract holders, are offered by Pacific Select Fund, a Massachusetts Business Trust which is registered as an open-end management investment company with the SEC.  *See id.* (Edgar company search).  Pacific Life is the investment advisor for the mutual fund portfolios, but subcontracts management of most of the portfolios to subadvisors.  Complaint ¶ 22.

31.    Spurgeon alleges that Pacific Life:  a) favored certain investors and permitted them to engage in market timing in funds holding foreign securities, Complaint ¶¶ 53(v), 57(v) & 62(vii); b) engaged in "fraudulent conduct," "fraudulent business acts and

---

[2] The current complaint described herein is plaintiff's First Amended Complaint, captioned *James E. Spurgeon, individually and on behalf of all others similarly situated v. Pacific Life Insurance Company.*

practices with others," and was "a co-participant" in fraudulent business practices, ¶¶ 69-72; c) "fail[ed] to provide complete and truthful information to Plaintiff and the Class regarding Pacific Life's allowance of market timing activities" and "fail[ed] to provide complete and truthful information to Plaintiff and the Class regarding the dilution of their holdings due to Pacific Life's failure to use accurate market values of foreign securities held in the underlying mutual funds' portfolios when setting daily UV's," ¶¶ 62(v) & 62(vi); and d) inaccurately valued subaccounts by basing valuations on the most recent available market prices rather than by estimating prices based on the potential impact of fluctuations in the United States and world equity markets, in the value of American Depository Receipts, and in foreign currency futures markets, ¶¶ 53(i), 57(i), 62(i), 65.

32.     Counts I and II assert negligence and gross negligence, including favoring certain investors and permitting them to engage in market timing. ¶¶ 53, 57. Count III asserts breach of fiduciary duties running to investors, including failure to disclose information about market timing and about the impact of market timing, and favoring certain investors and permitting them to engage in market timing. ¶ 62. Count IV asserts violations of Calif. Bus. & Prof. § 17200, including fraudulent acts and business practices. ¶¶ 65, 69, 70, 71, 72.

33.     Plaintiff purports to represent a nationwide class of those who, through ownership of any Pacific Life variable annuity product, held units in any subaccount invested in a fund including foreign securities that experienced market-timed trading. *Id.* at ¶ 39. Plaintiff seeks certification of this class under 735 Ill. Comp. Stat. 5/2-801. *Id.* at 15.

**IV.     The Procedural Grounds For Removal**

    **A.     SLUSA**

34.     This case is properly removed under SLUSA's own removal provision. As this Court has previously determined, "SLUSA imposes no time limits on removal." *Kwiatkowski v. Templeton Growth Fund, Inc.*, 05-CV-299-GPM, Doc. No. 25, 2005 U.S. Dist.

LEXIS 41946 at *4 (S.D. Ill. Aug. 24, 2005) (deciding, in addition, *Parise v. Templeton Funds, Inc.* and *Woodbury v. Templeton Global Smaller Companies Fund, Inc.*). *See also Bradfisch v. Templeton Funds, Inc.*, 05-CV-298-MJR, Doc. No. 24, 2005 U.S. Dist. LEXIS 14500 at *8 (July 12, 2005). The United States Court of Appeals for the Seventh Circuit has affirmed this Court's judgments in these four cases, which it consolidated. *See Bradfisch v. Templeton Funds, Inc.*, 2006 U.S. App. LEXIS 12394 (7th Cir. May 19, 2006).

35.     Moreover, the Seventh Circuit has twice reconfirmed that decision since the Supreme Court issued its decision in *Kircher*. *See Bradfisch v. Templeton Funds, Inc.*, No. 05-3390 and consolidated cases (7th Cir. June 15, 2006) (denying Bradfisch *et al.*'s petition for rehearing that had challenged, among other things, this Court's decisions that Templeton's second removals were proper under SLUSA and argued instead that removal was improper); *Bradfisch v. Templeton Funds, Inc.*, No. 05-3390 and consolidated cases (7th Cir. June 19, 2006) (denying Bradfisch *et al.*'s motion to vacate the Seventh Circuit's May 19 and June 15 orders in light of the Supreme Court's decision in *Kircher*).

36.     SLUSA's removal provision, *codified at* 15 U.S.C. § 78bb(f)(2)& § 77p(c), therefore provides one procedural basis for removal here.

**B.     Section 1446(b)**

37.     In addition, a second independent procedural basis for removal is provided by Section 1446(b). Section 1446(b) permits removal of any case: a) that is not initially removable; b) within 30 days of an order or other paper from which it can first be ascertained that the case is one which is or has become removable. Both requirements are met here.

38.     The first requirement is met by this Court's decision ruling the initial complaint not removable. *See Spurgeon v. Pacific Life Ins. Co.*, 04-CV-355-MJR, Doc. No. 27, 2004 U.S. Dist. LEXIS 29803 (S.D. Ill. June 24, 2004). That decision established that the initial complaint was not removable, with respect to these parties at that time. Although the decision

was subsequently reversed by the Seventh Circuit, the Seventh Circuit's decision has in turn been vacated by the Supreme Court. Thus, this Court's decision, with respect to the removability of this case prior to June 24, 2004, definitively established that the initial complaint in this specific case was not removable at that time in this jurisdiction.

39.    The fact that the Supreme Court's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit* subsequently changed the governing law did not change the consequences that follow from this Court's earlier decision with respect to whether this case was initially removable for purposes of Section 1446(b).[3]

40.    The appellate courts are unanimous on this point, beginning with one of the Supreme Court decisions the rule was intended to codify. *See, e.g.,* H. Rep. No. 352 (1949), *reproduced in* 2 U.S. Code Cong. Serv. 1248, 1268 (1949) (the second paragraph of Section 1446(b) was intended to be "declaratory of the existing rule laid down by the decisions. (See, for example, Powers v. Chesapeake etc., Ry. Co., 169 U.S. 92.)").

41.    In *Powers v. Chesapeake and Ohio Ry. Co.*, 169 U.S. 92 (1898) − the very decision cited in the House Report accompanying Section 1446(b) − the Supreme Court had affirmed a successive removal. Before it did so, however, the Court explained that it need not consider whether the lower court's earlier, initial remand decision was correct in light of subsequent decisions ruling the other way. The Court held that, for purposes of a second removal, it did not matter whether the lower court's initial remand decision had correctly applied

---

[3] Pacific Life recognizes that this Court opined in *dicta* that if the legal premise underlying a court's decision to remand a case for lack of subject matter jurisdiction was subsequently rejected by controlling authority, then the case should be considered initially removable and therefore not come within the second paragraph of Section 1446(b). *See Bradfisch v. Templeton Funds, Inc.*, 05-CV-298-MJR, Doc. No. 24, 2005 U.S. Dist. LEXIS 14500 (July 12, 2005). However, the parties to that litigation do not appear to have discussed the application of authority to this question or to have presented this Court with critical authority on this point. In light of the authority cited in the following paragraphs − which demonstrates Congress' intentions when it enacted Section 1446(b) and the subsequent application of Section 1446(b) by the federal appellate courts − Pacific Life respectfully disagrees with this Court's earlier expressed view and urges it to reconsider on the basis of this presentation of the question in its full legal context.

the law, "because that court, by its order remanding this case, distinctly and finally adjudged, as between these parties and for the purposes of this case, that, at the time of the filing of the first petition for removal, the case was not removable." *Id.* at 97-98.

42.     The Supreme Court's rulings have continued to be followed, and upheld as the proper approach under Section 1446(b), after the formal rule was enacted. First, a remand decision, regardless of its correctness, establishes once and for all that the remanded case was not initially removable. Second, the initial remand decision — even though final with respect to initial removability — does not preclude a later removal of the same case based on the same statutory provision.

43.     The Third Circuit, for example, has ruled that a successive removal is permissible under Section 1446(b), notwithstanding an earlier remand order premised on a legal conclusion that was determined — in a different, and subsequent, case — to be erroneous. *See Doe v. Amer. Red Cross*, 14 F.3d 196 (3d Cir. 1993). The Third Circuit found nothing "prohibiting the filing of a second removal petition pursuant to Section 1446(b)" even though the district court's "earlier order of remand . . . has now been demonstrated to have been decided erroneously." *Id.* at 200.[4]

44.     The Tenth Circuit has also ruled that a successive removal is permissible

---

[4] Although the Third Circuit raised the possibility that a *different* provision, Section 1447(d), *might* place some limitations on successive removal, that has no application here. The Seventh Circuit has since definitively ruled that the provision limits only appellate review, and that successive removal is governed by prudential law-of-the-case considerations. *See, e.g., Benson v. SI Handling Systems, Inc.*, 188 F.3d 780 (7th Cir. 1999) (recognizing also that new decisions or facts justify setting aside law of the case); *see, infra,* ¶ 51 *et seq.* The Third Circuit had not reached a different conclusion. It had merely left the question open for resolution another day on the ground that the circumstances of the case before it justified an exception *even if* the provision applied to a district court's review of a second removal. *See Amer. Red Cross*, 14 F.3d at 200-201 ("Whatever would be the interpretation of Section 1447(d) under ordinary circumstances, we do not deem it necessary to embark upon an exhaustive analysis of the *general* statutory language "not reviewable on appeal or otherwise," because we believe that we are required to yield to the *specific* mandate and public policy underpinnings of *S.G.* in this case.").

13

under Section 1446(b), notwithstanding an earlier remand premised on a legal conclusion the Court of Appeals thought erroneous. *O'Bryan v. Chandler*, 496 F.2d 403 (10th Cir. 1974). The Tenth Circuit explained that the requirement that "the original state court petition did not state a removable action" was nonetheless met because [the district court] held the original complaint not removable." *Id.* at 409. The Tenth Circuit emphasized that it would not review the district court's initial decision to remand in order to determine whether a second removal was now permitted. *Id.*

45.     The Fifth Circuit too has ruled that a successive removal is permissible under Section 1446(b), regardless of the fact that the legal basis for an earlier remand in the case was incorrect, as demonstrated by the Fifth Circuit's decision in a subsequent case. *See Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 265 (5th Cir. 2001) (noting that shortly after the initial remand in the case, the Fifth Circuit had held, in a different case, that the federal law under which removal had been sought preempted these types of claims).

46.     The second requirement is also met, because this case has been removed within 30 days of orders issued *in this case* from which it could first be ascertained that the case is removable. The question of whether a decision in an unrelated case satisfies Section 1446(b)'s requirement of "an amended pleading, motion, order or other paper" is therefore not presented here. The orders that permit Pacific Life to remove now under Section 1446(b) were orders issued in *this* case itself – the Seventh Circuit's October 16, 2006 decision, the Circuit Court of Madison County's November 9, 2006 order reopening this case, and this Court's November 20, 2006 order remanding this case to the Circuit Court of Madison County.

47.     These orders were the first orders or other papers from which it was possible to ascertain that this case had become removable. That is because it was not ascertainable that the case had become removable until it was again pending in a state court. Removal under Section 1446 or SLUSA is available only to actions pending in a state court. *See*

14

28 U.S.C. § 1446(a); 15 U.S.C. § 78bb(f)(2) & § 77p(c).

48.     From October 26, 2004, when the Seventh Circuit stayed this Court's remand to the Circuit Court of Madison County, this case was not pending in any state court. On May 27, 2005, the case was dismissed, by order of this Court. In reviewing the Seventh Circuit's earlier April 5, 2005 decision in this case, the Supreme Court did not address this Court's subsequent dismissal of the case nor the jurisdictional implications of Spurgeon's pursuing relief in this Court before petitioning the Supreme Court for review of the Seventh Circuit's prior decision. Those critical questions were not addressed by an appellate court until October 16, 2006, when the Seventh Circuit reversed this Court's dismissal order and instructed this Court to remand the case to state court.

49.     Until then, because the case had been dismissed, it was not even known that this case *would ever* be pending again in state court. The Circuit Court of Madison County ordered the case reopened in that court on November 9, 2006. This Court, following the Seventh Circuit's mandate, remanded the case to the Circuit Court of Madison County on November 20, 2006. Thus, not until November 9, 2006 and/or November 20, 2006 could it be ascertained that the case had become removable under Section 1446(b). This case is removed within 30 days of each of these orders.

50.     Thus, Section 1446(b) supplies an independent procedural basis for removal.

## V.     The Substantive Grounds For Removal

51.     Under governing Seventh Circuit law, once these technical requirements are met, as they are here, law of the case is the only potential barrier to a second removal under Section 1446(b).

52.     Law of the case doctrine determines whether grounds exist for a successive removal. "[T]he first remand . . . establishes the law of the case" and "may be

15

revisited only when intervening events justify that step." *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457 (7th Cir. 2005) (quotations omitted).

53.     Unlike some courts, the Seventh Circuit has expressly and consistently rejected arguments that the removal statutes place limits on second removals. In *Benson v. SI Handling Systems, Inc.*, 188 F.3d 780, 782 (7th Cir. 1999), for example, the Seventh Circuit flatly stated: "Neither § 1447(c) nor anything else in the sections of the Judicial Code devoted to removal forbids successive removals." Further, the Seventh Circuit has expressly ruled that Section 1447(d)'s provision that an order of remand to a state court "is not reviewable on appeal or otherwise" is *not* a limitation on a district court's ability to entertain a second removal; it is a limit solely on appellate review. As *Midlock* explains: "While as an original matter 'otherwise' might be thought to embrace review by another district judge, we and other courts have held that the reference is to other ways of obtaining *appellate* review, such as by asking for mandamus or a declaratory judgment and that the provision . . . does not preclude successive removals." 406 F.3d at 456 (citations omitted).

### A.     Intervening Decisions By Controlling Authority Permit Removal Here.

54.     Law of the case "does not block a successive removal if facts or law change after the initial remand." *In re Mutual Fund Market-Timing Litigation*, Nos. 04-1495 and consolidated cases, *slip op.* at 7 (7th Cir. Oct. 16, 2006). This is settled and governing law. *See, e.g., Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817(1988) ("the law-of-the-case doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power," a "court has the power to revisit prior decisions of its own or of a coordinate court in any circumstances," and it is appropriate to do so when "the initial decision was clearly erroneous") (quotations omitted); *Arizona v. California*, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."); *id.* at n.8 ("it is not improper for a court to depart from a prior holding if convinced that it is clearly

16

erroneous and would work a manifest injustice").

        55.    The Seventh Circuit has long held that law of the case should be set aside

after an "intervening change in the controlling authority." *Cameo Convalescent Center, Inc. v.

Percy*, 800 F.2d 108, 110 (7th Cir. 1986) ("we find that the district court's refusal to hold to the

doctrine is appropriate in this instance because of a change in the law"); *accord Santamarina v.

Sears, Roebuck & Co.*, 2006 U.S. App. LEXIS 25861 at *3 (7th Cir. 2006) ("the doctrine of law

of the case . . . authorizes such reconsideration if there is a compelling reason, such as a change

in, or clarification of, law that makes clear that the earlier ruling was erroneous"); *United States

v. Windom*, 82 F.3d 742, 748-49 (7th Cir. 1996) ("the law of the case doctrine has an exception

that allows . . . reconsideration . . . where there has been an intervening change of controlling

law"); *Evans v. City of Chicago*, 873 F.2d 1007, 1014 (7th Cir. 1989) ("law of the case . . . is a

self-imposed prudential limitation" that may be set aside if, *inter alia*, "controlling authority has

since made a contrary decision of law applicable to such issues; or the decision was clearly

erroneous, and would work a substantial injustice"); *Colaizzi v. Walker*, 812 F.2d 304, 310 (7th

Cir. 1987) ("an intervening change of law is a familiar reason for refusing to apply the law of the

case doctrine"); *Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987) ("a change of law is a

reason not to apply the doctrine of law of the case"); *Champaign-Urbana News, Inc. v. J.L.

Cummins*, 632 F.2d 680, 683 (7th Cir. 1980) ("The law of the case does not demand

obsequiousness right or wrong.").

        56.    Here, the Supreme Court's unanimous 2006 decisions in *Merrill Lynch,

Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1507 (2006) and *Kircher v. Putnam

Funds Trust*, 126 S. Ct. 2145 (2006), and the Seventh Circuit's equally unanimous 2006 panel

decisions in *Bradfisch v. Templeton Funds, Inc.*, 2006 U.S. App. LEXIS 12394 (7th Cir. May 19,

2006), *Order Denying Rehearing* (7th Cir. June 15, 2006), 2006 WL 1751307; and *Order

Denying Motion to Vacate* (7th Cir. June 19, 2006) – are sufficient intervening changes in the

controlling authority to justify reconsideration of the law of this case.

57.     These decisions make clear that this Court's earlier conclusion that the case was not within SLUSA was erroneous and establish that this Court has jurisdiction under SLUSA's removal provision, *codified at* 15 U.S.C. § 78bb(f)(2)& § 77p(c), and federal question jurisdiction, 28 U.S.C. § 1331, because the asserted state law claims are completely preempted by SLUSA.

**B.     *Dabit, Kircher* and *Bradfisch* Establish That SLUSA Applies Here.**

58.     *Dabit* established that SLUSA reaches holder class actions, like Spurgeon's. *See Dabit*, 126 S. Ct. at 1515 ("For purposes of SLUSA pre-emption, that distinction [between holders and purchasers/sellers] is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud "in connection with the purchase or sale" of securities.").

59.     *Kircher* established that *Dabit*'s holding "disavows" the legal basis for this Court's earlier conclusion that Spurgeon's complaint did not fall within SLUSA. *See Kircher*, 126 S. Ct. at 2156. In addition, the Seventh Circuit's most recent decision in this case, *In re Mutual Fund Market-Timing Litig.*, reconfirmed that the Supreme Court "held that the district judge's 2004 decision was mistaken" when it initially remanded these market timing cases, 2006 U.S. App. LEXIS 25660 at *10, and noted that "the Supreme Court has agreed with [the] substantive approach" taken by the Seventh Circuit which led it to conclude "that claims of this kind arise under federal securities law" and "are preempted by" SLUSA, *id.* at *2. The Supreme Court's disagreement was limited to the Circuit's jurisdiction to review the 2004 decisions. *Id.*

60.     *Bradfisch*, a subsequent Seventh Circuit decision, did not suffer from the jurisdictional defect recognized by the Supreme Court, because it was not an appeal of a remand decision but an appeal of a final judgment dismissing the case, which is indisputably reviewable. *Bradfisch* established that market-timing complaints like Spurgeon's *do* fall within SLUSA. *See*

*Bradfisch v. Templeton Funds, Inc.*, 2006 U.S. App. LEXIS 12394 at *2 (7th Cir. May 19, 2006).

61.     The complaints and substantive questions in the four *Bradfisch* cases are so similar to Spurgeon's that plaintiff's own counsel asked the Seventh Circuit to consolidate the four *Bradfisch* plaintiff's appeals with Spurgeon's and others (Motion to Consolidate, filed August 15, 2005). The Seventh Circuit agreed and did consolidate these appeals (*Order*, Aug. 19, 2005), until their differing procedural postures led the court to decide the *Bradfisch* cases earlier.[5]  This Court had also noted that Spurgeon's complaint "bears striking similarities to other recently removed class actions challenging portfolio valuation and share pricing policies such as *Bradfisch v. Templeton Funds, Inc.*" 2004 U.S. Dist. LEXIS 29803 at *2 (relying on these striking similarities to reach the same legal conclusions with respect to the Spurgeon case that this Court had earlier reached in *Bradfisch, id.* at *6).

62.     The Seventh Circuit, in reviewing the four complaints in *Bradfisch* that alleged the same valuation and pricing conduct and market-timed transactions alleged here, found *Dabit* applicable to the four cases and found that their allegations fell solidly within SLUSA. The Seventh Circuit expressly rejected the plaintiffs' argument that the allegations were outside SLUSA because they complained of negligent management, noting that "labels are not material" in considering whether allegations fall within SLUSA. *Bradfisch v. Templeton Funds, Inc.*, 2006 U.S. App. LEXIS 12394 at *2 (7th Cir. May 19, 2006); *see also Order Denying Petition for Rehearing* at 2 (June 15, 2006), 2006 WL 1751307, (reconfirming that plaintiffs' allegations that the value of their shares declined because the funds' assets were diminished by market-timed trades did not state a direct action for negligence and did not place their allegations outside SLUSA).

---

[5] The Seventh Circuit determined it could decide the *Bradfisch* cases directly after *Dabit* was decided because they were not among the cases consolidated in the *Kircher* cases before the Supreme Court and therefore the Seventh Circuit's jurisdiction over them would not be affected by the Supreme Court's decision in *Kircher*.

63.    The Seventh Circuit twice reconfirmed its SLUSA ruling in *Bradfisch* after the Supreme Court decided *Kircher*. *See Bradfisch v. Templeton Funds, Inc.*, No. 05-3390 and consolidated cases, *Order Denying Petition for Rehearing* at 2 (June 15, 2006) & *Order Denying Motion to Vacate* (7th Cir. June 19, 2006) (denying motion to vacate earlier decisions in light of the Supreme Court's decision in *Kircher*).[6]

64.    The Seventh Circuit's re-confirmation of its *Bradfisch* decision, *after* the Supreme Court vacated its earlier opinion in *Kircher* for lack of appellate jurisdiction, clarifies the Seventh Circuit's considered conclusion that the Supreme Court's decision in *Kircher* does not require a different result in the *Bradfisch* cases than it had earlier reached.

### C.    *Dabit* Also Established That SLUSA Must Be Read Broadly To Prevent Plaintiffs From Avoiding Federal Anti-Abuse Measures By Dressing Securities Actions In State Law Clothing.

65.    The Supreme Court recognized in *Dabit* that these attempts to bring state law class actions involving national securities were *precisely* what Congress sought to avoid in enacting SLUSA.  The Supreme Court explained that Congress had enacted the Private Securities Litigation Reform Act (PSLRA) in 1995 because it had "identified ways in which the class action device was being used to injure 'the entire U.S. economy.'"  *Dabit*, 126 S. Ct. at 1510.  *Dabit* also noted that Title 1 of the PSLRA was captioned "Reduction of Abusive Litigation."  126 S. Ct. at 1511.  SLUSA was enacted because the PSLRA "prompted at least some members of the plaintiffs' bar to avoid the federal forum altogether."  *Id.*

66.    The Supreme Court explained that the "phenomenon" of plaintiffs and their representatives bringing class actions involving securities under state law "was a novel one," noting that the evidence before Congress was that, before the PSLRA was enacted, "state-

---

[6] The Seventh Circuit's *Bradfisch* decisions are unpublished, but are nonetheless precedent because they were issued in an appeal which included this case.  The Seventh Circuit consolidated the *Bradfisch*, *Kwiatkowski*, *Parise*, and *Woodbury* cases with *Spurgeon* and other market timing cases in orders issued August 19, 2005, September 2, 2005, and September 8, 2005, *attached* at Exhibit E.  *See* 7th Cir. R. 53(b)(2)(iv).

court litigation of class actions involving nationally-traded securities had previously been rare." *Id.* at 1511. "Prior to the passage of the [PSLRA] there was essentially no significant securities class action litigation brought in State court." *Id.* at 1514. The Court further noted that Dabit's counsel and his *amici* had managed to identify "only *one* pre-SLUSA case involving a state-law class action asserting holder claims." *Id.* at 1515. No pre-SLUSA state-law class actions involving the allegations at issue here were identified there or in any of the market timing cases.

      67.    *Dabit* made clear that Congress intended to end this sudden resort to state courts and state law for securities class actions and did not intend such plaintiffs to wriggle out of SLUSA preemption by clever drafting and sham distinctions. Thus, *Dabit* not only ruled that holder claims meet SLUSA's "in connection with" requirement, but ruled generally that applying SLUSA must be based on the "presumption that Congress envisioned a broad construction." *Id.* at 1513. Although it had been asked only to resolve the holder question, the Supreme Court went further and applied SLUSA, consistently with that presumption, to rule that Dabit's allegations that Merrill, Lynch had not provided the unbiased research it had promised its clients should not be viewed as stating a breach of contract claim but as complaining of "fraudulent manipulation of stock prices" which "unquestionably qualifies as fraud" within the meaning of SLUSA. *Id.* at 1515. (Spurgeon's market-timing allegations about the pricing of Pacific Life's securities and transactions in them expressly alleges fraud and omission of material information.)

      68.    Moreover, the Supreme Court expressly rejected the Second Circuit's reliance on the ordinary presumption against preemption because it was an inappropriate approach to interpreting SLUSA, explaining that the "presumption carries less force here than in other contexts because SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class action device to vindicate certain claims." *Id.* at 1514.

      69.    These intervening decisions by controlling authority establish that this Court has jurisdiction over this case under SLUSA. Moreover, they also establish that declining

21

to apply this intervening authority would work a substantial injustice, because Congress intended attempts like Spurgeon's to bring securities class actions under state law to be stopped at the earliest stage of litigation in order to prevent the "vexatious discovery requests" and "extortionate settlements" which were injuring the entire U.S. economy. *Dabit*, 126 S. Ct. at 1510-11. To delay a correct decision under SLUSA any longer – when this Court has the jurisdiction and obligation to issue it – would work a substantial injustice, and would frustrate Congress' express goals in enacting SLUSA. *See id.* at 1511.

## VI.    VENUE AND NOTICE

70.    Venue is proper under 28 U.S.C. § 1441(a) because the action has been pending in this district and division.

71.    Defendant has filed a copy of this Notice of Removal with the Clerk of the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, in which the action has been pending, and will promptly serve such notice upon all adverse parties. Pacific Life is represented by the undersigned counsel who certify, pursuant to Rule 11 of the Federal Rules of Civil Procedure, that the foregoing is true and correct.

Dated:  November 28, 2006                Respectfully submitted,

PACIFIC LIFE INSURANCE COMPANY
*By its attorneys,*

*W. Jason Rankin*

Larry E. Hepler    # 01195603
W. Jason Rankin  # 06237927
Hepler, Broom, MacDonald,
           Hebrank, True & Noce, LLP
103 West Vandalia Street
Edwardsville, IL 62025-0510
Telephone: (618) 656-0184
Facsimile: (618) 656-1364

*Of Counsel:*
Steven B. Feirson
Stephen J. McConnell
Nory Miller
DECHERT LLP
2929 Arch Street
Cira Centre
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 994-2222

Kathleen N. Massey
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

## Certificate of Service

The undersigned certifies that a copy of the foregoing has been served upon the attorneys of record by mailing same by United States mail, postage prepaid, this 28th day of November, 2006, to the following:

Robert L. King
Swedlow & King LLC
701 Market Street, Suite 350
St. Louis, MO 63101

Stephen M. Tillery
Christine J. Moody
Korein Tillery
10 Executive Woods Court
Belleville, IL 62226

George A. Zelcs
Korein Tillery
205 N. Michigan Avenue, Suite 1950
Chicago, Illinois 60601

John J. Stoia, Jr., Esq.
Timothy G. Blood, Esq.
William J. Doyle II, Esq.
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Andrew S. Friedman
Francis J. Balint, Jr.
Bonnett, Fairbourn, Friedman & Balint, P.C.
2901 N. Central Avenue, Suite 1000
Phoenix, Arizona 85012

*Attorneys for Plaintiff and the Putative Class*

Larry E. Hepler    # 01195603
W. Jason Rankin   # 06237927
*Counsel for Defendant*
*Pacific Life Insurance Company*

24