IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. SPURGEON, individually and of behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>PACIFIC LIFE INS. CO., )<br><br>Defendant. ) | Case No. 06-CV-983-MJR |

### PLAINTIFF'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT

The Court's dismissal of this case with prejudice without leave to replead was in error. As discussed below, final dismissals with prejudice for failure to state a claim without leave to replead are not to be granted unless "it appears '**beyond doubt**' that [the plaintiff] cannot state a good cause of action." *Czosek v. O'Mara*, 397 U.S. 25, 27 (1970) (emphasis added). SLUSA did not purport to change that longstanding rule. Thus, the March 6 dismissal should have been with leave for Plaintiff to replead. Accordingly, Plaintiff should be granted leave to amend his complaint to state a claim that is not precluded by SLUSA.

In the final paragraph of its dismissal order, the Court states that "Plaintiff's claims are embraced within the broad reach of SLUSA's preemption provision, as made clear by the Supreme Court's unanimous 2006 decision in *Dabit*." 3/6/07 Order at 11-12. That conclusion, however, is based upon a misapprehension of Plaintiff's position. The Court wrote, "[t]he fact that the plaintiff may be a holder (rather than a seller or purchaser of securities) 'is irrelevant' for SLUSA preemption purposes." *Id*. at 12. While that is undeniably correct, Plaintiff did not take the position in this second removal that he can avoid SLUSA simply because he is a holder.

Rather, as Plaintiff argued in his 1/31/07 memorandum in opposition to the motion to dismiss (at pp. 2-9), SLUSA does not preclude two of Plaintiff's four counts because two of his counts do not include allegations of "misrepresentation or omission." Accordingly, the dismissal of those counts, particularly *with prejudice* without leave to replead, was erroneous. The Court therefore should grant Plaintiff leave to replead his claim to omit the SLUSA-precluded allegations.

A second and independent ground for reconsideration concerns the Court's denial of Plaintiff's Motion to Remand on the ground that the Court's November 20 order (under docket number 04-CV-355) constituted an "order … from which it may first be ascertained that the case is one which is or has become removable" within the meaning of 28 U.S.C. § 1446(b). As discussed more fully below, the Court's November 20 order at most simply put the case in a procedural posture from which it could be re-removed if the appropriate grounds for re-removal existed. That order did not, however, provide the grounds for a second removal. *See Dudley v. Putnam Inv. Funds*, No. 06-940-GPM, 2007 WL 329129 (S.D. Ill. Feb. 1, 2007) (holding that December 7, 2006 remand order implementing *Kircher IV* mandate was not an "order" within the meaning of 28 U.S.C. § 1446(b) triggering the right to re-remove case).

As the Court noted in its March 6 Order, the decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, __, 126 S.Ct. 1503 (2006), is not an "order" which triggered Defendant's right to re-remove this case. 3/6/07 Order at 7 ("although ***Dabit*** (a significant change in the law) might justify a fresh removal of some cases, it did not do so here"). Thus, if there had been no appeal from the Court's 2004 remand order, the Supreme Court's *Dabit* decision in 2006 would not have provided Defendant the opportunity to remove the case a second time. The mere fact that the case continued to pend in the federal courts on Defendant's

ultimately unsuccessful appeal in 2004, 2005 and 2006, is no reason that result should change. Accordingly, the Court should have held (consistent with this Court's holding in *Dudley*) that its November 20 order did not constitute an "order" within the meaning of 28 U.S.C. § 1446(b) and should have remanded the case to state court.

**I. The Court should grant Plaintiff leave to amend his complaint because he can state a viable state law claim for negligence which does not include any allegation of misrepresentation, omission of a material fact or "manipulation" within the meaning of SLUSA.**

It is an axiom of federal procedural law that "complaints should be construed to avoid dismissals and the plaintiff at the very least 'should be given the opportunity to file supplemental pleadings unless it appears "beyond doubt" that he cannot state a good cause of action.'" *Czosek v. O'Mara*, 397 U.S. 25, 27 (1970) (emphasis added) (quoting *O'Mara v. Erie Lackawanna R. Co.*, 407 F.2d 674, 679 (2d Cir. 1969).

> Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend. This will afford the party against whom the dismissal is granted the option of amending the pleading or of having a judgment entered against him and taking an appeal. Dismissing with leave to amend is consistent with the mandate set forth in Rule 15(a) that amendments should be freely granted.

6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, *Fed. Prac. & Proc. Civ.2d* § 1483 (2007). *See also Conley v. Gibson*, 355 U.S. 41, 45-46, (1957) (*cited in Czosek*) ("In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

It is not "beyond doubt" that Plaintiff can allege no set of facts that does not run afoul of SLUSA. Indeed, even in the currently dismissed complaint in this case, Plaintiff has alleged at

3

least one count which does not run afoul of SLUSA: Count I for negligence.[1] As the Court noted in its March 6 Order, SLUSA precludes[2] "covered class actions" based on state law in which a plaintiff alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 3/6/07 Order at 12. Conversely, if a plaintiff has not made allegations of the sort described in SLUSA, then SLUSA does not preclude the lawsuit.

### A. Plaintiff can amend his claim so that he does not allege—in form or substance—that Defendant deceived anyone or "manipulated" anything, and he should therefore be permitted to replead.

In Count I of his proposed amended complaint, Plaintiff has not alleged and establishment of the claim will not require proof: 1) that anyone ever made a misrepresentation to anyone else about anything; or 2) that anyone engaged in market "manipulation" as that term is defined under federal securities law. Only allegations of fraud or manipulation justify removal under SLUSA. *See Gavin v. AT&T Corp.*, 464 F.3d 634, 636 (7th Cir. 2006). Accordingly, Plaintiff's negligence claims is not subject to dismissal under SLUSA because Plaintiff does not allege fraud or market manipulation.

The gist of Plaintiff's proposed amended complaint is that Defendant negligently sold annuity sub-account units at too low a price to third parties and that those sales diluted the value of Plaintiff's investment. Here is how that works.

Consider hypothetically a variable annuity sub-account in which ten investors have pooled their money, and each of the investors owns one unit of the sub-account. One day the U.S. market makes substantial late-day upward gains, after foreign markets have already closed.

---

[1] In his recklessness claim, Count II, Plaintiff alleges exactly the same actionable conduct but alleges that Defendant's conduct was not merely a breach of the duty of ordinary care (and thus negligent) but that Defendant engaged in the identical conduct without regard for Plaintiff's rights and was thus reckless. In order to simplify the issues, however, Plaintiff has limited his amended pleading to a single claim of negligence.

[2] "The preclusion provision is often called a preemption provision; the Act, however, does not itself displace state law with federal law but makes some state-law claims nonactionable through the class action device in federal as well as state court." *Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145, 2151 n.1 (2006).

Defendant uses the actual closing prices of foreign securities to calculate the sub-account's value, even though it is a virtual certainty foreign markets will follow the U.S. upswing when they open the next day. As a result, the assets of the sub-account are in reality worth $10 (and thus each share is worth $1), but because actual closing prices of the foreign securities are used to calculate the value of the sub-account, the sub-account is calculated to be worth only $5 or $0.50 per unit. An eleventh investor purchases one unit at the undervalued price of fifty cents. The sub-account's assets increase to $10.50 but since those assets are now owned by eleven investors, each unit is now actually worth only ninety-five cents (*i.e.*, $10.50/11 units). The original ten investors' unit values thus drop by five cents per share, not as the result of the performance of the foreign securities and not due to market fluctuations, but purely and simply due to the sale of the eleventh unit of the sub-account at the price calculated with the stale closing prices of the foreign securities.

When the value of the sub-account is recalculated the following day after foreign markets have caught up to the U.S. market, its value is now computed to be $10.50. The eleventh investor then redeems his one unit at ninety-five cents, making a whopping forty-five cent profit at the expense of the ten original long-term investors. Even if the eleventh investor does not sell his unit, he will always own more than his fair share of the sub-account because he was able to buy 1/11 of the sub-account at a price which corresponded to only 1/22 of the sub-accounts' value. Conversely, the long-term investors will thereafter always own less than their fair share of the sub-account because their ownership of the sub-account was diluted by the negligently discounted sale to the eleventh investor.

That claim for negligent performance, as explained more fully below, is not one SLUSA precludes. The federal securities laws are not designed to reach the kind of conduct Plaintiff

alleges which involves no element of deceit or manipulation. As Judge Friendly explained in *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir. 1984) :

> The purpose of § 10(b) and Rule 10b-5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

*Id*. at 943. Because Plaintiff's claims do not involve such allegations of trickery, deceit or misrepresentation—but instead involve allegations of negligent performance—they are not of the sort the securities laws are designed to remedy. Consequently, they are also not the kind that SLUSA precludes.

**B. A negligently calculated price of a variable sub-account unit is not a Rule 10b-5 or Section 10(b) "misrepresentation" because it is not misleading or deceptive, and it is therefore not a SLUSA "misrepresentation."**

Just so the record is clear, Plaintiff does not and never has advocated that by simple evasion of certain words like "misrepresentation," "omission" or "manipulation" he could avoid SLUSA's reach. Rather, it is Plaintiff's allegations that matter because SLUSA "precludes":

> a claim only if it: (i) is brought by a private party: (ii) is brought as a covered class action; (iii) is based on state law; (iv) *alleges that the defendant misrepresented* or omitted a material fact (*or employed a manipulative device or contrivance*); and (v) asserts that defendant did so in connection with the purchase or sale of a covered security.

*Erb v. Alliance Capital Management, L.P.*, 423 F.3d 647, 651 (7th Cir. 2005) (emphasis added). *See* 15 U.S.C. §§ 78bb(f)(1)(A) & (B) (SLUSA).

In its reply in support of its motion to dismiss, Defendant for the first time identified the specific allegations in Plaintiff's negligence claim that Defendant says constitute an allegation of "misrepresentation." Those allegations, according to Defendant[3] are the allegations that the

---

[3] Defendant also argued in its Reply that Plaintiff's allegation that Defendant "favor[ed] certain investors and permit[ed] them to engage in market timing at the expense of other investors" "is the *definition* of market

6

prices at which Defendant sometimes sold sub-account units did not "reflect the current market value" or did not "reflect their true market value." Def. 2/12/07 Reply at 3. Nobody concerned—not Plaintiff, not market timers, not even the market itself— was ever misled by the negligently calculated prices, however. Indeed, nobody could possibly have been misled by the negligently calculated prices, and that is a demonstrable fact beyond any dispute. Here's why.

Unlike investors who buy a stock at a known price, sellers and purchasers of sub-account units ***do not know*** the unit price at which their purchases or sales will be executed. The price of a variable annuity sub-account unit does not fluctuate throughout the course of a trading day the way stocks do. The price or value of a variable annuity sub-account unit "is set once every trading day at the close of trading on the New York Stock Exchange." Proposed Amended Complaint ¶ 16. That price does not change until it is recalculated at the close of trading on the next trading day. *Id*.

Orders for the purchase or sale of variable annuity sub-account units placed during the course of a trading day are not actually executed until after the close of trading and ***after*** the price of the unit is recalculated that day. ¶ 15. If an order for the purchase or sale of a unit is placed after the close of trading, it is treated as though the order was placed the following trading day and will not be executed until the ***next*** trading day. *Id*. As a result, no one ever knows the price at which his or her order will be executed at the time he or she places an order to purchase or sell sub-account units. A purchaser or seller of sub-account units only knows what the previous day's unit price was. ¶¶ 15-16.

---

manipulation." 2/12/07 Reply at 3. In point of fact, "[t]he term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Id*. "[W]e do not think [Congress] would have chosen this 'term of art' if it had meant to bring within the scope of § 10(b) instances of corporate mismanagement such as this, in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary." *Id*. at 477. In any event, Plaintiff has not repeated this allegation in his proposed amended complaint, and the allegations of his amended complaint do not include any allegations of that Defendant employed a "manipulative device or contrivance" within the meaning of federal securities law.

7

As a result of the way sub-account unit purchase and sale orders are placed and executed—placed before the price is established and executed after the price is established—it is impossible for the price of a sub-account unit *ever* to cause anyone to purchase or sell because every purchase or sale occurs *before* the price is established. This is the reason that even if the price of a sub-account unit is viewed as a "misrepresentation" (as Defendant contends), it is metaphysically impossible for that "misrepresentation" to be a "misrepresentation" within the meaning of federal securities laws: in other words, a ***misleading*** misrepresentation. "To be actionable, of course, a statement must also be misleading." *Basic, Inc. v. Levinson,* 485 U.S. 224, 239 n.17 (1988).

### C. A representation made *after* a sale is not material.

"Rule 10b-5 makes it unlawful to "... make any untrue statement of a ***material*** fact," *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 655 (4th Cir. 2004) (emphasis added), and "the Supreme Court treats Section 10(b) identically to Rule 10b-5 for purposes of materiality." *Id* at n.6 (citing *Basic,* 485 U.S. at 231). Just as "a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market," *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 167 (2d Cir. 2000), a representation which purchasers or sellers are unaware of at the time of their transaction is an immaterial representation because it, too, cannot defraud the market or, more particularly, cannot defraud purchasers and sellers.

### D. An immaterial representation made *after* a sale is not "in connection with" the sale.

SLUSA precludes covered class actions in which a private party alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 77bb(f)(1)(A). In *Dabit,* the Supreme Court interpreted that very statutory language by reference to section 10(b). "'When … judicial interpretations have settled the meaning of an

8

existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its ... judicial interpretations as well.'" 126 S.Ct. 1503, 1513 (quoting *Bragdon v. Abbott,* 524 U.S. 624, 645 (1998)).

Finally, an immaterial statement which could not and did not mislead cannot be "a misrepresentation in connection with the purchase or sale of a covered security." Despite the admittedly broad and flexible interpretation of the "in connection with" language of section 10(b) and thus of SLUSA, that statutory phrase still does have its limits. Even after *Dabit*, "'the "connection" requirement must be taken seriously.'" *Gavin v. AT&T Corp.*, 464 F.3d 634, 640 (7th Cir. 2006) (quoting *Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183, 189 (7th Cir. 1993)).

Although courts have interpreted the "in connection with" requirement in many ways, none of them fit here. The "misrepresentation" to which Defendant has pointed did not "coincide with" sales because the sales orders were placed **before** any supposed "misrepresentation" (*i.e.*, statement of price) occurred. *SEC v. Zanford*, 535 U.S. 813, 820 (2002) ("fraud coincided with the sales themselves"). The "misrepresentation" also does not have any kind of "causal connection" to the sales, again because sales orders were placed **before** the "misrepresentation" occurred. *Hunt v. Robinson*, 852 F.2d 786, 787 (4th Cir. 1988) ("'causal connection between the alleged fraud and the purchase or sale of stock' required" to satisfy "fraud 'in connection with' that sale"); *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984) (Friendly, J.) ("'but-for' causation is not enough"); *Gavin v. AT&T Corp.*, 464 F.3d 634, 639-40 (7th Cir. 2006) (Posner, J.) ("but for" causation insufficient); *In re Financial Corp. of Am. Shareholder Litig.*, 796 F.2d 1126, 1130 (9th Cir. 1986) ("One factor to be considered in

9

determining whether the 'in connection with' requirement has been met is whether a causal connection between the fraud and the transaction has been shown").

In the variable annuity context there is no causal connection between a negligently calculated price and the purchase (or sale) of a sub-account unit because no one on the planet knows the price at which the purchase (or sale) will be executed until after all trade orders for the day have been placed. Thus, there is *always* an unbridgeable disconnect between the sale or purchase of a sub-account unit and the price at which the purchase or sale will be executed.

Several courts have held that a fraud occuring *after* a sale cannot be "in connection with" the purchase or sale of a security. *Kogan v. National Bank of N. Am.*, 402 F.Supp. 359, 361 (E.D.N.Y. 1975) ("'in connection with' has been construed to mean that the fraud practiced must have been prior to or contemporaneous with the sale of securities" and there is "no reason to depart from" those interpretations); *Fuller v. E. I. DuPont, Glore, Forgan & Co.*, 54 F.R.D. 557, 560 (W.D. Mo. 1971) (same); *Pepsico, Inc. v. W. R. Grace & Co.*, 307 F.Supp. 713, 720 (S.D.N.Y. 1960) (same) (citing *Seward v. Hammond*, 8 F.R.D. 457 (D. Mass. 1948)).

The negligent calculation of price does not even "coincide" with the sale as a matter of common English usage because "coincide" means "to come to occupy the same place in space, the same point or period in time, or the same relative position." *Webster's Encyclopedic Unabridged Dictionary of the English Language*, 287 (1st ed. 1989). Defendant's negligent calculation of price always and invariably occurs, however, *after* all sales orders are placed.

It is important to remember that it does not matter whether Defendant can twist Plaintiff's allegations into allegations of misrepresentation. "Simply because the operative facts of a complaint *can* give rise to a claim of fraud does not mean that the complaint *must* be read as

alleging fraud." *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 268 (S.D.N.Y. 2004). What matters is what Plaintiff have actually alleged.

In its reply in support of its motion to dismiss, Defendant argued that *Xpedior* "was decided before *Dabit* and applied the Second Circuit's narrow approach to SLUSA that the Supreme Court has since ruled erroneous." Def. 2/12/07 Reply at 5. The only part of that statement that is correct is that *Xpedior* was decided before *Dabit*.

*Dabit* dealt solely with the issue of whether a holder's claim of fraud is one "in connection with the purchase or sale of a covered security" within the meaning of SLUSA. The Supreme Court held that "the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities" for purposes of SLUSA. 126 S.Ct. 1503, 1515. Throughout its opinion, the Court stressed the fact that Dabit had alleged fraud and manipulation.

> The gist of Dabit's complaint was that Merrill Lynch breached the fiduciary duty and covenant of good faith and fair dealing it owed its brokers by ***disseminating misleading research and thereby manipulating stock prices***. Dabit's theory was that Merrill Lynch ***used its misinformed brokers to enhance the prices of its investment banking clients' stocks***: The research analysts, under management's direction, allegedly ***issued overly optimistic appraisals of the stocks' value***; the brokers allegedly relied on the analysts' reports in advising their investor clients and in deciding whether or not to sell their own holdings; and the clients and brokers both continued to hold their stocks long beyond the point when, ***had the truth been known, they would have sold***. The complaint further alleged that ***when the truth was actually revealed*** (around the time the New York attorney general instituted his investigation), the stocks' prices plummeted.

***

> The complaint alleged, for example, that the prices of the subject stocks were "artificially inflated as a result of the ***manipulative efforts***" of Merrill Lynch, and that Merrill Lynch, "acting as a central nerve center in the ***manipulation*** of various stocks ..., ***perpetrated this stock manipulation through a variety of deceptive devices, artifices, and tactics that are the hallmarks of stock manipulation***."

***

11

> The holder class action that respondent tried to plead, and that the Second Circuit envisioned, is distinguishable from a typical Rule 10b-5 class action in only one respect: It is brought by holders instead of purchasers or sellers. For purposes of SLUSA pre-emption, that distinction is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud "in connection with the purchase or sale" of securities. ***The misconduct of which respondent complains here—fraudulent manipulation of stock prices—unquestionably qualifies as fraud "in connection with the purchase or sale" of securities*** ….

*Id*. at 1507 & n.2, 1515.

The issue in *Xpedior*, by contrast, was whether the plaintiff's allegations in that case constituted allegations of misrepresentation or manipulation within the meaning of SLUSA, the same issue this case now presents. *Dabit* does not effect the continued vitality of the *Xpedior* court's reasoning (*i.e.*, that SLUSA preempts only claims sounding in fraud) nor did *Xpedior* rely upon the "Second Circuit's narrow approach to SLUSA" at issue in *Dabit*. In *Dabit*, "the Second Circuit held that SLUSA only pre-empts state-law class-action claims brought by plaintiffs who have a private remedy under federal law." 126 S.Ct. at 1507. "Under the Second Circuit's analysis, fraud is only 'in connection with the purchase or sale' of securities, as used in SLUSA, if it is alleged by a purchaser or seller of securities" *Id*. at 1508. That was simply and clearly ***not*** the issue in *Xpedior*, Defendant's arguments to the contrary notwithstanding. As the Xpedior court explained:

> Because Xpedior's Complaint alleges neither "a misrepresentation or omission of a material fact" nor "that the defendant used or employed any manipulative or deceptive device or contrivance," it is not preempted by SLUSA. Because this element of SLUSA is not satisfied, I make no finding with respect to Xpedior's argument that its claims do not satisfy SLUSA's requirement that the allegations be made "in connection with the purchase or sale of a covered security

341 F.Supp.2d at 270. The reasoning of *Xpedior* is sound, and Defendant has offered this Court no reason not to follow it.

Plaintiff does not allege that Defendant engaged in deceit. Plaintiff does not allege Defendant misled anyone. There is simply nothing in Plaintiff's proposed amended complaint that sounds in

12

fraud, and "SLUSA does not preempt claims 'which do not have as a necessary component misrepresentation[s], untrue statements, or omissions of material facts'" or which do not "sound in fraud." *Xpedior*, 341 F. Supp. 2d at 266. The Court should therefore grant Plaintiff leave to amend his proposed amended complaint.

> **E. Defendant's adherence to its usual valuation and pricing procedures on occasional market timing days does not constitute "manipulation" within the meaning of the securities laws, including SLUSA. It constitutes negligence.**

The term "manipulation" or "manipulative device or contrivance" "is 'virtually a term of art when used in connection with securities markets.'" *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976)). Pl. Br. at 24. Plaintiff has not alleged that Defendant employed any "manipulative device" in connection with anyone's purchase or sale of a covered security. To the contrary, Plaintiff has alleged that Defendant ***did not deviate*** in any way whatsoever from its regular, standard methodology for calculating the price of a sub-account unit. Indeed, it is that slavish adherence to the usual calculation methodology which Plaintiff claims was unreasonable—in other words negligent— and not that it is somehow "manipulative."

Plaintiff has also not alleged that market timers employed any "manipulative device." Plaintiff has alleged that market timers did only one thing: they bought and sold shares of annuities. ¶¶ 33-34. The only thing market timers did was shrewdly purchase or sell on days when they anticipated the price would be a particularly good one.

In its reply in support of its motion to dismiss, Defendant contended that "*Santa Fe* recognized that allegations of 'rigged prices, that are intended to mislead investors by artificially affecting market activity' are 'manipulation.'" 2/12/07 Reply at 5. But that is non-responsive to Plaintiff's point that Defendant a) did not "rig" prices, it negligently employed its usual valuation methodology on days when it should not have, b) that the negligently calculated prices were not

13

"intended to mislead investors"—indeed *could not* mislead anybody—because they are calculated only after all sales orders are placed and after the market closes, and c) that because the negligently calculated prices do no "mislead investors" they cannot (and in fact, do not) "artificially affect market activity." Thus, even Defendant's exegesis of *Santa Fe* does not convert Plaintiff's allegations into allegations of a "manipulative device."

**II. This Court's November 20, 2006 Order did not make this case removable but, at most, only placed the case (as the Court has recognized) "in a procedural posture from which it could be re-removed."**

The Court's conclusion that *Dabit* did not "justify a fresh removal of this case" (3/6/07 Order at 7), but that this Court's November 20 Order did, is paradoxical. Assume for purposes of argument that instead of erroneously attempting to exercise appellate jurisdiction over the *Kircher* appeal (which included this case), the Seventh Circuit had dismissed Defendant's appeal for lack of jurisdiction in June 2004. As the Court has correctly recognized, the Supreme Court's decision in *Dabit* a year and a half later in 2006 would not have "justif[ied] a fresh removal of this case." 3/6/07 Order at 7.

The only difference in that scenario and what actually occurred, however, is that the case had an extended stay in the federal court system simply because the Seventh Circuit erroneously entertained Defendant's appeal in *Kircher*. Ultimately, the Supreme Court instructed the Seventh Circuit to do what it should have done in 2004: dismiss the appeal for lack of appellate jurisdiction. After the Seventh Circuit did so, this Court eventually entered a new remand order on November 20. The most that order did was put the case "in a procedural posture from which it could be re-removed." 3/6/07 Order at 8. In other words, the November 20 Order put the case back I state court which is the only place from which a case may be removed to federal court. March 3 Order at 8. Putting the case back in state court did not make the case re-removable, however. Something more was necessary to make the case re-removable. The "something more"

could only be *Dabit*, yet as the Court has recognized, "although *Dabit* (a significant change in the law) might justify a fresh removal of some cases, it did not do so here."

Chief Judge Murphy recently addressed the identical issue in *Dudley v. Putnam Inv. Funds*, No. 06-940-GPM, 2007 WL 329129 (S.D. Ill. Feb. 1, 2007), holding that his December 7, 2006, remand order entered pursuant to "the *Kircher IV* court's mandate" (and thus analogous to the November 20 Order in this case) did not constitute an "order" within the meaning of 28 U.S.C. § 1446(b) entitling the defendant in that case to remove the case a second time. Judge Murphy reasoned that his December 7 order did not constitute an "order" triggering the defendants' right to remove because that "order executing the mandate in *Kircher IV* made no determination about the existence of subject matter jurisdiction …." *Dudley*, 2007 WL 329129 at *6. In other words, the 2006 remand order did not provide new grounds for removal. Just like the November 20 order here, all Judge Murphy's December 7 order did was put the case into "in a procedural posture from which it could be re-removed." 3/6/07 *Spurgeon* Order at 8. Like the December 7 order in *Dudley*, the November 20 order here did not provide Defendant any **new grounds** for re-removing the case.

## Conclusion

For all of the foregoing reasons, the Court should set aside its March 6 Order in this matter on the grounds that its November 20 Order was not an "order" within the meaning of 28 U.S.C. § 1446(b) triggering Defendant's right to re-remove the case. Alternatively, the Court should grant Plaintiff leave to file his proposed amended complaint.

By: /s/ Robert L. King
ROBERT L. KING
505 North Seventh Street, Suite 3600
St. Louis, Missouri 63101
Telephone: (314) 863-6902
Facsimile: (314) 863-7902

KOREIN TILLERY LLC
STEPHEN M. TILLERY
10 Executive Woods Court
Swansea, Illinois 62226
Telephone: (618) 277-1180
Facsimile: (314) 241-3525

KOREIN TILLERY LLC
KLINT L. BRUNO
209 S. LaSalle, Suite 701
Chicago, Illinois 60604
Telephone: (312) 759-7510
Facsimile: (312) 759-7516

KOREIN TILLERY LLC
GEORGE A. ZELCS
205 N. Michigan Avenue, Ste. 1950
Chicago, Illinois 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

LERACH COUGLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR.
TIMOTHY G. BLOOD
AMELIA F. BURROUGHS
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

BONNETT, FAIRBOURN,
 FRIEDMAN & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

    The undersigned certifies that service of the foregoing document was made by means of the Notice of Electronic Filing on March 20, 2007 to the following counsel of record:

**Steven B. Feirson**
Dechert LLP
1717 Arch Street, 4000 Bell Atlantic Tower
Philadelphia, PA 19103
steven.feirson@dechert.com

**Larry E. Hepler**
Burroughs, Hepler et al.
 103 West Vandalia Street
Suite 300, P.O. Box 510
Edwardsville, IL 62025-0510
leh@ilmolaw.com

**Kathleen N. Massey**
Dechert LLP - New York
30 Rockefeller Plaza
New York, NY 10112
kathleen.massey@dechert.com

**Stephen J. McConnell**
Dechert LLP - Philadelphia
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA 19103-2793
stephen.mcconnell@dechert.com

**Nory Miller**
Dechert LLP - Philadelphia
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA 19103-2793
nory.miller@dechert.com

**W. Jason Rankin**
Burroughs, Hepler et al.
103 West Vandalia Street
Suite 300, P.O. Box 510
Edwardsville, IL 62025-0510
wjr@ilmolaw.com

      /s/Robert L. King
    ROBERT L. KING